<u>FIRST US DISTRICT COURT, BANGOR, MAINE</u>
&
<u>BELFAST SUPERIOR COURT, WALDO COUNTY, MAINE</u>

| | | |
|---|---|---|
| Bradley Paul Williams, plaintiff pro se | ) | Docket # 17-CV-43-GZS; |
| | ) | BELF 16-CV-062 & BELF 16-CR-711 |
| | ) | |
| 58 City Point Rd. | ) | MOTION TO DISQUALIFY BERNIE KUBETZ |
| | ) | |
| Belfast, ME 04915 | ) | & EATON/PEABODY |
| | ) | |
| 207-323-7755, 616ozpbrs@gmail.com | ) | FOR CONFLICT OF INTERESTS, |
| | ) | |
| V | ) | & CRIMINAL CONSPIRACY TO TAMPER WITH A |
| | ) | WITNESS, & OTHER EQUITABLE INJUNCTIVE |
| AMAZON, FISHMAN et al | ) | RELIEF, REQUEST FOR MONETARY SANCTIONS |
| | ) | PURSUANT TO 28 U.S.C. § 1927 |
| | ) | MOTION FOR PROTECTIVE ORDER |
| | ) | ORAL ARGUMENTS REQUESTED |
| | ) | EXPEDITED HEARING REQUESTED |

    Plaintiff Williams (Defendant in Fishman V Williams) hereby moves to disqualify attorney Bernie Kubetz and his law firm Eaton Peabody in these matters for an impermissible conflict of interests. Plaintiff further moves pursuant to Rule 26 for a protective order precluding opposing counsel from conducting discovery pending resolution by the court on the issue of disqualification by opposing counsel.

    This motion is not brought in bad faith, and is not interposed for an improper purpose, for harassment or a delay in the proceedings, and therefor, an expedited ruling is requested to ensure a prompt administration of justice, without unnecessary delay to any party.

    This motion is supported by the following memorandum of points and authorities, attached exhibits, and the entire body of related cases and exhibits.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

1.    In September, 2014, the Plaintiff was falsely arrested for mailing a $40 charitable donation to the pedophile drummer of Touchpants, who's 1st CD is entitled Poopy Penis Poetry. After the Plaintiff filed a response to a fraudulent restraining order with the court entitled "Return For Cause", he was arrested and was prevented redress from the court with several contrived criminal charges, which were finally dismissed because a DA can't bring a man before a jury for sending a pedophile a summons inviting him to court.

2.    The Plaintiff then began emailing Joe Baiungo, an attorney who had agreed to mediate. Baiungo had represented Williams in the past. The Plaintiff was seeking vindication for his false arrest. Joe Baiungo, instead of responding to the fee schedule and valid concerns in the emails, called the police and obtained a 2nd fraudulent restraining order from the police calling the confidential and valid emails further stalking offenses. A hearing was set for April 24th, 2016. The Plaintiff prevailed and won. The judge ruled that no crime was committed up to April 24th, and admonished the police, and the Defendants, that the Plaintiffs activities are all 1st Amendment protected free speech. **See exhibits 1 & 2.** Mr Fishman's every allegation was adjudicated as false on April 24th, 2016 and the Plaintiff was vindicated.

3.    On April 15th, just before the hearing, the Bangor Daily News published a very libelous

already been absolved of any wrong doing. The Plaintiff responded by mailing three "notice of pending litigation" documents : one to the Bangor Daily News **Exhibit 3**, for it's libelous article of April 15, 2016, **Exhibit 4**, one to Joe Baiungo for his conflict of interests and one to Mr. Kubetz's client Mrs. Jon Fishman **Exhibit 5**.

5.    Mr. Kubetz responded to all three of the notices of pending litigation thus: he relieved Joe Baiungo of his duties and took his position representing the Fishmans, he answered the BDN's notice properly, with a denial letter, **Exhibit 6**, and he counseled his new clients the Fishman's to file yet more fraudulent criminal charges against the Plaintiff that had the audacity to send the BDN a notice of pending litigation. He counseled one client, Mrs Fishman, to commit felonies to tamper with an action against his other client, and now she is next to be sued. He imperiled her with his conflicted advice with his BDN clients firmly in mind.

6.    Mrs Fishman, while under Mr Kubetz's counsel, with the false criminal charges, had quite effectively tampered with the Plaintiff's ability to bring his very valid claim against Kubetz's clients the BDN to an amicable resolution with perhaps a simple retraction.

7.    He has over-burdened the Plaintiff adversary of his BDN clients with frivolous motions to restrict filings, and with a blatant false arrest for mailing his client a notice of pending litigation when there was no restraining order in effect. Judge Spiraca had cleared Plaintiff of all wrongdoing and he was then arrested for filing another motion. This is attorney insanity.

8.    He has presented this court with a 100% certainty that his conflict of interests will interfere with the justice system again, just like it has already.

9.    His conflict of interests has already created yet another action negative to his pedophile client, IE Williams V Amazon and Touchpants, **Exhibit 7**, which the Plaintiff conceived of and filed as a direct result of the conflict of interests. This was admittedly done in direct response to the unethical conflict of Bernie Kubetz, his pedophile client, and the BDN. They doubled down with manipulating the press and a false arrest with the conflict so the Plaintiff doubled down with another suit as well.

10.    His conflict of interests have effectively precluded his BDN clients from printing a retraction and reaching an equitable conclusion to their libel conflict with the Plaintiff. The Plaintiff is forced to fight back at Kubetz's transgression of his code of ethics, as Kubetz lines his pockets with the money of the hapless pedophile, the BDN, and now Amazon. And the article was favorable about the pedophile.

11.    The Plaintiff should be getting a commission from Kubetz for all of the extra work that his conflict has generated. The Plaintiff can do a variety of things detrimental to Kubetz's clients that he normally wouldn't consider if the conflict did not exist, such as involving Mrs Fishman and/or her children in the pedophile action. This would further enrich Kubetz. If Kubetz is not constrained by ethics or morals, the Plaintiff need not be either. This is detrimental to everyone but Bernie Kubetz.

12.    Mr Kubetz is attempting to confuse and outmaneuver the dyslexic pro se litigant with his vastly superior knowledge of the law, this conflict,  and the rules of procedure in an attempt to circumvent justice with technicalities.

13.    A lawyer simply cannot represent two sides in a related litigation and have one commit multiple felonies to keep his name out of the other's newspaper. This has the appearance of impropriety while placing both clients, the court, and the Plaintiff in untenable positions.

Memorandum of Law

Two centuries ago, Chief Justice Marshall remarked that the authority to disqualify an errant attorney is "incidental to all courts." A court, in exercise of its inherent powers of supervision[1], may disqualify counsel found to be in conflict of interest with respect to a case before the court.

When opposing counsel is in a serious conflict of interest, it is clearly the duty of an attorney to move for disqualification. That is clearly the case here.

The evidence shows that the likelihood of demonstrable harm has already manifested itself twice,

---

1    1. In re Gopman, 531 F.2d 262, 266 (5th Cir. 1976); Estates Theatres, Inc. v. Columbia Pictures Indus., 345 F. Supp. 93, 95 n.l (S.D.N.Y. 1972).

and will certainly happen again, unless this court grants this disruptive relief.

In analyzing a conflict of interest situation it is useful to ask what relations of counsel give rise to the conflict and who stands to be harmed by that conflict.

The evidence, logic and common sense all show clearly that it is the very integrity of this court, therefor the People of the United States, including the Plaintiff, that stands to be harmed by Mr Kubetz's representing both the pedophile drummer of Touchpants, the Bangor Daily News and now Amazon.com and Jeff Bezos. It is his conflict that precipitated the lawsuit Williams V Amazon & Touchpants, so he should be precluded from participating. This is ambulance chasing at it's worst.

If his client the BDN ever published the true story, the pedophile would be in jail where he belongs. If the BDN ever published the truth about the pedophile and Mr Kubetz, Mr Kubetz would be tarred and feathered by the people of Bangor. He is libel to them. Mr Kubetz is liable in the libel suit against the BDN as a result of this conflict, as evidenced by the suit itself.

And most importantly, when the pedophile re-offends, hurts a child, and actually gets prosecuted, Mr Kubetz's client the BDN would be culpable for their failure to publish the truth about the eminent threat posed to the public in their malicious refusal to publish the naked truth about the naked man in front of the kids.

Only evidence uncovered by the hands of time can ascertain the future unforeseen damages to his uninformed clients in this matter, which, if this Plaintiff has his way, will be considerable.

The offended Plaintiff feels moral outrage which has compelled him to retaliate with actions against Bernie Kubetz's clients and co-conspirators in this criminal fraud, which is itself evidenced by this conflict-of-interests. He defrauded the pedophile by taking his retainer, effectively giving constructive notice that there is no real actionable conflict of interests, when there obviously is a problematic conflict of interests. This could be construed as a criminal conspiracy between Kubetz, the pedophile, and the BDN, all Democrats, to circumvent criminal prosecution for the pedophile's sex crimes in an attempt to tamper with the election. It certainly has that appearance.

There is no other rational explanation for the BDN's blatant neglect of the Jon Fishman pedophile scandal: this is pay for play for the Defendant's. This should be front page news for the safety of the people, but this conflict has the pedophilia allegations censored.

The evidence clearly shows, and the discover-able evidence will bolster and reinforce, that Bernie Kubetz is in egregious dishonor of the ABA's Code of Professional Conduct, as well as guilty of criminal offenses[2], in his attempts to circumvent detection, punishment and/or disciplinary action for his civil and criminal offenses.

The 9th Canon of the Code of Professional Responsibility is: "A lawyer should avoid even the appearance of professional impropriety." There can be no doubt that Canon Nine remains an important factor in disqualification cases, but recent decisions have shown a tendency to require more than a bare appearance of impropriety. Thus, one district court held that "the possibility that an attorney's representation in a given case may give rise to an 'appearance of impropriety' is not enough to disqualify. Specific facts must point to a marked danger that the perceived evil will result[3]." The fact is, that the perceived evil already has resulted in the form of Williams V BDN, **Exhibit 8,** filed today.

Likewise, the Second Circuit held that "when there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases.[4]"

These trials are tainted because of Bernie Kubetz; he represents both the Bangor Daily News, defending them from libel charges resulting from their libelous article against the Plaintiff and in favor of the pedophile, AND the pedophile drummer of Touchpants in his frivolous lawsuit against the Plaintiff for libel. A pedophile rock star cannot sue a chimney sweep for saying that he is a pedophile

---

2  Conspiracy to have Plaintiff arrested. Defrauding his clients. Tampering. Etc.

3  Society for Good Will to Retarded Children, Inc. v. Carey, 466 F. Supp. 722, 724 (E.D.N.Y. 1979).

4  Board of Educ. v. Nyquist, 590 F.2d 1241, 1247 (2d Cir. 1979).

rock star, yet Kubetz is the attorney in this frivolous action. This gives the attorney Kubetz the unfettered ability to tamper with a jury and to influence public perception, via the BDN, against the other. Mr. Kubetz and the BDN have already demonstrated that they can and will distort the truth in their favor because they already have. He has cleverly given himself incentive and a motive for lawlessness, and it can only go down hill from here.

This conflict has already tainted several actions, both in Maine Superior Court and the US District Court.

In June 2016, the Plaintiff had filed and mailed three lawful notices of pending litigation, one to attorney Joe Baiungo, one to the Bangor Daily News, and one to Mr Kubetz's client, Mrs. Jon Fishman.

Mr. Kubetz counsel to his client Mrs. Fishman was to unlawfully call the police and report the lawfully mailed notice as evidence of stalking behavior, and had the Plaintiff unlawfully arrested on August 31, 2016, for six counts of stalking, terrorizing, and tampering. The Plaintiff suffered a detached retina during the arrest. These were exactly the same charges that were dismissed in the Plaintiff's favor for exactly the same fraudulent claims by the same people that have already been adjudicated. Mr Kubetz is skating on very thin ice here and it's getting hot.

The evidence clearly shows that it is Mr. Kubetz, his obvious conflict, his client Fishman and the BDN that are tampering with these proceedings, and not the Plaintiff, who was falsely accused and arrested for tampering. Mr. Kubetz responded to one notice of pending litigation with a proper denial letter, and the other with the unlawful arrest of his adversary. These were mailed on the same day. Had his adversary that was arrested been a BAR attorney, Bernie Kubetz, the Fishman's and the owners of the BDN would be in jail.

The reality of the situation is this: Mr. Kubetz and the Fishman's contrived and manufactured the 2nd false charges against the Plaintiff, who is now at the mercy of the Bangor Daily News, who now has a vested interest in seeing the Plaintiff lose. With a word from Bernie Kubetz, the BDN can publish any damning news about the Plaintiff that they want. By merely slanting the news about the second false arrest he can permanently taint the jury pool, and they instigated the arrest for mailing a document.

A reasonable person could surmise that it is Kubetz's control over the editorial content of the BDN that has prevented the prosecutions that the Plaintiff is seeking against the pedophile and the police.. This seems probable here. Some mysterious force prevents the BDN from reporting the news and the bad guys are walking free.

All the Plaintiff had done was mail a notice of pending litigation to Kubetz's clients because they were tampering with the outcome of the April 24th, 2016 hearing on behalf of the pedophile and the Democratic party. The Plaintiff didn't even know that the Fishman's and the BDN were both being influenced by Kubetz at the time; small world. Bernie Kubetz was the ring-leader of this miscarriage of justice.

Not only is there a clear and present danger of the Kubetz's BDN writing and publishing false, derogatory information about the Plaintiff in an attempt to influence the outcome, they already have.

Demand For Disbarment

DR 1-103(A) applies to BAR judges as well: ""A lawyer possessing knowledge of a violation of DR 1-102 shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation." As a BAR member, the judge is equally,if not more so, obligated to report Mr. Kubetz's indiscretions with rule violations to the Board of Overseers. Furthermore, it would be Misprision of Felony to not report the criminal violations to the Attorney General.

DR 1-102 is violated whenever there is a violation of any other disciplinary rule.[5].

If the Plaintiff were a BAR attorney, he would be obligated to report these violations. The Fifth Circuit, for example, has held that "when an attorney discovers a possible ethical violation concerning a

---

5   DR 1-102(A)(1) provides: "A lawyer shall not: Violate a Disciplinary Rule."

matter before a court, he is not only authorized but is in fact obligated to bring the problem to that court's attention."[6]

Plaintiff requests an order sending this conflict on to the Board of Overseers pursuant to these rules.

Another reason for granting this motion to disqualify is because the opposing counsel is now a named fact witness in the libel case Williams V Bangor Daily News, Exhibit 6. He is now correctly named as a Defendant in the very libel suit that he has attempted unlawfully to circumvent. He knew this was coming and attempted 2 frivolous motions to restrict filings. Rule 3.7 of the Rules of Professional Conduct does impose limits on a lawyer's participation in a case in which he is likely to be called as a fact witness.

Plaintiff would be remiss to not call Kubetz as a fact witness now for tampering allegations via his conflict of interests in three cases because of his conflict; it appears that he and his clients violated the law when he counseled the Fishman's to arrest the Plaintiff for mailing the notices of pending litigation on behalf of the BDN, and the BDN has already tampered with the April 24th hearing on behalf of the Fishman's. This is not only a conflict, it is a criminal conspiracy.

"The rules are far more strict when the opposing counsel or a member of his firm currently represents the adverse party, and a motion to disqualify will likely be granted under such circumstances." Yale Law Review.

"A lawyer should not file the motion before presenting the issue to the targeted lawyer and providing him an opportunity to justify his continued appearance in the case. "

The Plaintiff had done this verbally and by emailing Mr. Kubetz regarding this conflict-of-interests. The emails went unanswered. **Exhibits 9-11.**

In these Mr Kubetz was asked for written waivers of informed consent which went u8nanswered.

It is Kubetz's impermissible adverse subsequent representation of Jon Fishman that precipitated the new actions against Fishman and the BDN, therefor Kubetz must be stopped before he does any more damage; to the court, the people, the Plaintiff, and his sadly misinformed clients.

Concurrent conflicts of interests; a lawyer representing a client that takes an adverse position to another current client without informed consent,[7] are not allowed, and will frequently be the basis for motions for disqualification. Whether Mr. Kubetz want's to admit it or not, his concurrent conflict of interests in representing both the BDN for libel and the pedophile for libel, while he's sitting on the fence hoping that it works out alright, is replete with past, present and future pitfalls for all.

Rule 1.7 is here.[8]

The conflict-of-interest will become very apparent when Williams V BDN goes before the jury and the pedophile client of Kubetz's gets called to the stand to testify in that case. Kubetz can not object to any testimony that might be detrimental to his other clients.

It will also be obvious when the BDN reporter that Kubetz represents goes before the jury to testify against Kubetz's pedophile client in Fishman V Williams.

And it will be apparent when Mr. Kubetz gets called to the stand in Williams V BDN, and it will become very apparent when the Plaintiff sues Mrs. Fishman over the false arrests at Kubetz's prodding.

---

6  In re Gopman, 531 F.2d 262, 265 (5th Cir. 1976). See also In re Grand Jury, 446 F. Supp. 1132 (N.D. Tex. 1978); Estates Theatres, Inc. v. Columbia Pictures Indus., 345 F. Supp. 93, 98 (S.D.N.Y. 1972).

7  See, e.g., CenTra, Inc. v. Estrin, 538 F.3d 402, 417–19 (6th Cir. 2008)

8  Rule: ABA Model Rule 1.76 (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer. (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if: (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing.

for his money, a very successful delaying tactic which he desperately needs and can easily afford. The
evidence shows that the Plaintiff was literally blinded by the Defendants actions during his false arrest.
Plus, the Defendants are the wealthiest entities in the land, and the Plaintiff isn't. It is they that are
tampering with him.

Defendants suffer no hardship seeking alternate counsel, Mr Kubetz's ethical violations here
would indicate that their hardships would instead be alleviated by Kubetz's disqualification. Indeed, the
Defendant's have already been represented by Joe Baiungo.

The Defendants have the two tallest buildings in Bangor and Fishman has Trump Tower. They'll
live.

## No Informed Consent/Impossibility of Informed Consent

Rule 1.7 states "each affected client gives informed consent, confirmed in writing". Mr Kubetz has
dishonored emailed requests for the written notices of a conflict-of-interests as well as refusing to
produce said waivers when asked in court. This is taken as constructive notice by implication that he
neglected to obtain signatures on said waivers. Furthermore, in this unusual situation, it would be
impossible for anyone to make an informed decision as to what the future problems such a conflict
might generate because Mr Kubetz has no foresight of the future. He can only speculate, but he cannot

9  LAW GOVERNING LAWYERS § 6 cmt. i (2000). See In re Dresser Indus., 972 F.2d 540, 543 (5th Cir. 1992)
10 In re Meador, 968 S.W.2d 346, 350 (Tex. 1998)

"Disqualification, where appropriate, and that a client's substantial interest in a client's loyalty is protected.⁹" (noting that courts should consider whether the "likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case").

Similarly, "a court has the power, under appropriate circumstances, to disqualify an attorney even though he or she has not violated a specific disciplinary rule." [10]

Mr. Kubetz has lost a very similar case; Raymond Veilleux V NBC. In this case, Plaintiffs Raymond and Kelly Veilleux, and Peter Kennedy claimed that a segment about the threat posed by tired truck drivers ruined their reputations and nearly destroyed their business. Raymond and Kelly Veilleux owned Classic Carriers of Waterville, Maine and Peter Kennedy drove for Classic. An NBC crew rode with Kennedy and filmed his activities while making the expose. Plaintiffs claimed that statements made by NBC during the segment were not true and they were damaged by the publication of the story on NBC's "Dateline" program. The verdict for Peter Kennedy was for $175,000 and for the Veilleux was $350,000.

Mr. Kubetz gave Judge Nivison his job. A Sept 23, 2013 article in the BDN entitled Superior Court "Judge Nivison selected to replace retiring U.S. Magistrate judge" states "Nivison and other candidates were screened by a 13-member panel, headed by Bangor attorney Bernard Kubetz, that included lawyers, a former judge and members of the public, according to the posting." It would clearly be inappropriate for Judge Nivison to rule in these matters as Plaintiff does not exert an influence on a judge like the man who gave him his job.

Appearance of Impropriety

The appearance of impropriety here is astonishing. For the opposing counsel to defend a newspaper for libel and the wealthy pedophile who has sued the chimney sweep for saying that he's a wealthy pedophile, while controlling what is promulgated by and from the newspaper of record is as egregious as it gets. It is astonishing that the newspaper of record would allow the record to be tainted by Kubetz on behalf of his pedophile client. His conflict got them sued for their neglect in publishing the true story of the Plaintiff's struggle against the pedophile, and for him counseling them not to print a retraction in favor of his pedophile client.

<u>Disqualification of Counsel Works Hardships on the Plaintiff & Not the Defendants</u>

The pedophile Jon Fishman has a bad habit of hiring tainted lawyers willing to ~~abrogate th...~~
~~f... l...~~

inform his clients of future events. Informed consent waivers, in this case, are moot. He's already got them all sued.

Conclusion

Opposing counsel, and his firm, by virtue of their concurrent and simultaneous representation of both The Bangor Daily News and the recipient of their journalistic largess, the pedophile Jon Fishman, who has sued the Plaintiff for "falsely alleging that I am an unprosecuted sex criminal", have irrefutably demonstrated a willingness and the ability to tamper with public opinion regarding these matters.

This presents a reasonable possibility that more such transgressions will follow. The pro se Plaintiff is being pummeled by three powerful adversaries in Bernie Kubetz's corner and the referee needs to step in quickly.

Bernie Kubetz and his firm Eaton Peabody, must be disqualified for his impermissible conflict of interest between Mr. Kubetz, the BDN, Amazon.com, Touchpants and the Plaintiff.

Plaintiff has sustained his burden of proof that said conflict of interests exists and that it not only has a great reasonable possibility of creating more problems for all, it already has.

There is an inescapable factual and legal nexus of relevance and materiality between Mr Kubetz's representation of the BDN for their libel on behalf of the pedophile; and the pedophile who has sued the Plaintiff for calling him a pedophile. The appearance of impropriety is overwhelming..

Simply put, when the wealthy pedophile walked into Bernie Kubetz's office and said "the Plaintiff called me a pedophile", Mr. Kubetz should have said "I'm sorry, but I already represent the BDN because of you, and the Plaintiff and I are in negotiations. Due to an obvious conflict of interests, I can not represent you".

This he failed to do. He committed the same offense again with Williams V Amazon & Touchpants.

These are obviously "substantially related" and clearly violate the rules governing professional conduct.

Obviously the pedophile's representation would be materially enhanced if the BDN refrains from publishing the truth about the spokesperson for the Democratic party, Touchpants and his album Poopy Penis Poetry. The reverse is also true. The pedophile's libel suit against the Plaintiff would instantly lose all credibility if the BDN simply told their readers the truth.

Mr. Kubetz holds an unusual position as an attorney for the "newspaper of record"; he tells them what they should and shouldn't publish. This would naturally preclude an ethical attorney from taking any number of cases pertaining to the BDN, including these. He can't represent a murderer and the newspaper that "broke the case" either. This court needs to tell him. Here the paper itself has a vested interest that the Plaintiff loses these related actions, and Mr Kubetz has leveraged his advantage against the pro se Plaintiff in favor of the not-yet-prosecuted pedophile. He is cheating and he knows it.

Neither a rational attorney nor an honest newspaper would err on the side of a pedophile with a band called Touchpants, yet they did. The reason that the BDN is a dishonest paper is because their attorney is a dishonest attorney and the pedophile is lavishing cash.

The real evidence that Mr Kubetz's bad choices are deleterious to this court and to his clients, and of no benefit to anyone but himself, is Plaintiff's filing of a new lawsuit against the BDN for their libel article of April 15th, 2016, filed today simultaneously with this motion.

The obvious better choice would have been to accept the Plaintiff's offer of a retraction. This conflict has generated a lot of overtime for Mr Kubetz and headaches for everyone else, except perhaps his other client, the wealthy pedophile, who has just got the BDN sued.

In conclusion, this court must infer that the simultaneous and concurrent representation between Mr. Kubetz, the BDN, the pedophile Jon Fishman and his band Touchpants, does violate Rule 1.7's prohibitions against conflicts of interest and the appearance of impropriety. The court must infer that this does represent a concurrent conflict of interests that is directly adverse to his other clients and third parties, and that one or more will in great probability have their representation materially limited by his

responsibilities to the other. They already have.

## Platsky V CIA

Plaintiff is a pro se litigant. Platsky V CIA clearly demands that "This court would err to dismiss the pro se litigant's filing without first informing him of it's defects, educating him as to how to repair them, and giving him the opportunity to do so".

In lieu of dismissing this filing, the Plaintiff would ask what is wrong with it, how to repair it, and pray for the opportunity to do so.

## Injunction on Discovery

Furthermore, as Kubetz, Eaton and Peabody must be disqualified, this court should, in the interests of justice, enter an order precluding their counsel from conducting any discovery in this matter until such time as this court has rendered it's order on Williams motion to disqualify.

## Relief For Damages

Plaintiff is a pro se litigant/attorney who values his time equally and equitably as the same as Bernie Kubetz. He is guilty of this conflict and he has inflicted great damages.

Pursuant to 28 U.S.C. § 1927 the Plaintiff is entitled to be reimbursed for his troubles precipitated by Mr Kubetz's behavior.

The Plaintiff didn't ask for this job inflicted upon him by Mr Kubetz, but Mr Kubetz did. Whatever amount of money that this conflict extracted out of the BDN and the Fishman's is how much Mr. Kubetz owes the Plaintiff. He shouldn't be allowed to keep a dime, and should be forced to pay the Plaintiff for his labors, plus any other equitable relief this court might grant.

The good Plaintiff's labors are worth more than the bad lawyers any old day of the week.

Written and filed this 4th day of April, 2017.
Bradley Paul Williams
58 City Point Rd.
Belfast, Maine 04915